UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PRITI GARG NOHRIA,<br><br>      Plaintiff,<br><br>    v.<br><br>TRACY RENAUD,[1] *Senior Official Performing the Duties of the Director, U.S. Citizenship and Immigration Services*,<br><br>      Defendant. | Civil Action No. 20-cv-2085<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

Plaintiff Priti Garg Nohria, an Indian citizen residing in the United States, Compl. ¶ 28, ECF No. 1, seeks to compel the U.S. Citizenship and Immigration Services ("USCIS") to adjudicate her I-526 petition "for classification as a fifth preference immigrant to pursue permanent resident status based on investing $500,000 in a new commercial enterprise through a project that [d]efendant already approved for receiving pooled foreign investments," *id*. at 1, after her petition had been pending without decision for less than two years, *id.*; Def.'s Not. Suggestion of Mootness ("Def.'s Not."), ECF No. 13. USCIS has moved to dismiss the complaint, under Federal Rule of Civil Procedure 12(b)(6), for failure to "allege a plausible claim that the alleged delay constitutes an unreasonable delay upon which relief may be granted under the Administrative Procedure Act," Def.'s Mem. P&A Supp. Def.'s Mot. Dismiss ("Def.'s Mem.") at 1, ECF No. 7, and as moot because plaintiff's I-526 petition has been approved, Def.'s Not. Plaintiff disputes that her complaint is moot until USCIS transfers the approval of her

---

[1]   Pursuant to Federal Rule of Civil Procedure 25(d), plaintiff automatically substitutes Tracy Renaud, successor to formerly listed Kenneth T. Cuccinelli, as the defendant in this action.

1

petition to the National Visa Center for processing, Pl.'s Resp. Order to Show Cause Relating to Def.'s Not. ("Pl.'s OTSC Resp.") at 2, ECF No. 14, and further contests USCIS's motion to dismiss, *see generally* Pl.'s Mem. P&A Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n"), ECF No. 8.

For the reasons set forth below, this complaint must be dismissed as moot.

## I. BACKGROUND

Following brief review of the statutory and regulatory background, the factual history underlying the claims and procedural history of this case are summarized below.

### A. Statutory and Regulatory Background

#### 1. *EB-5 Classification Generally*

The Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, authorizes the issuance of visas to different categories of immigrants, including, under the so-called "EB-5" program, to immigrants who contribute to "employment creation" by investing in new commercial enterprises that create full-time jobs for American workers, *see* Immigration Act of 1990, Pub. L. No. 101-649, § 121(a), 104 Stat. 4978, 4989 (Nov. 29, 1990) (codified at 8 U.S.C. § 1153(b)(5)); *see* 8 C.F.R. § 204.6 (2020) (defining the requirements and process for EB-5 "alien entrepreneur" classification). To qualify for a visa under the EB-5 program, an immigrant must "create full-time employment for not fewer than 10 United States citizens or aliens lawfully admitted for permanent residency or other immigrants lawfully authorized to be employed in the United States (other than the immigrant and the immigrant's spouse, sons, or daughters)." 8 U.S.C. § 1153(b)(5)(A)(ii). To that end, the immigrant must have made or be in the process of making an investment of at least $1,000,000 generally or at least $500,000 into a "targeted employment area," 8 U.S.C. § 1153(b)(5)(C)(ii).[2]

---

[2] Effective November 21, 2019, the threshold amounts required for EB-5 investments were increased from $1,000,000 to $1,800,000 generally and from $500,000 to $900,000 for targeted employment areas. *See* Final Rule,

A "targeted employment area" is defined as "a rural area or an area which has experienced high unemployment (of at least 150 percent of the national average rate)," *id.* § 1153(b)(5)(B)(ii). USCIS permits certain so-called "economic units" to apply for categorization as a "targeted employment area" and designation as a "regional center" through the Immigrant Investor Pilot Program. *See* Departments of Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act of 1993 ("Appropriations Act"), Pub. L. No. 102-395, § 610(a), 106 Stat. 1828, 1874 (Oct. 6, 1992); 8 C.F.R. § 204.6(m). To qualify for designation as a regional center, an economic unit must "promot[e . . .] economic growth," *id.* § 204.6(e); *see* Appropriations Act § 610(a), and the proposal for such designation must explain, *inter alia*, how the economic unit focuses on a geographic region of the United States and will promote economic growth through "increased export sales, improved regional productivity, job creation, or increased domestic capital investment." 8 C.F.R. § 204.6(m)(3)(i). Upon designation as a regional center, a foreign investor may then invest in the center to satisfy, with the requisite threshold amount of funds, the EB-5 employment-creation requirement by creating jobs indirectly. *Id.* §§ 204.6(j)(4)(iii), 204.6(m)(7)(ii); *see also* Interim Rule, *Immigrant Investor Pilot Program*, 58 Fed. Reg. 44,606, 44,607 (Aug. 24, 1993).

2. EB-5 Visa Processing Procedure

Foreign investors seeking EB-5 visas must first file a petition with USCIS, using Form I-526, to petition for classification as an EB-5 investor. *See* 8 C.F.R. §§ 204.6(a), (c). The burden of proof rests on petitioners to establish, by a preponderance of the evidence, that they are "eligible to receive [the] visa" for which they are petitioning. 8 U.S.C. § 1361; *see Matter of*

---

*EB-5 Immigrant Investor Program Modernization*, 84 Fed. Reg. 35,750, 35,808 (Jul. 24, 2019). The parties agree that, because plaintiff filed a Form I-526 petition on September 28, 2018, before the threshold amounts were increased, she still qualifies for the program having invested the previously required sum. *See* Def.'s Mem. at 2 n.1; Pl.'s Opp'n at 11.

*Chawathe*, 25 I. & N. Dec. 369, 375–76 (2010).  USCIS adjudicates I-526 petitions based on the totality of the evidence presented.  *See id.* at 375–76.  "Once the petition is processed and [if] a visa becomes available—which may take years—the immigrant advances to 'conditional' lawful permanent resident status."  *Mirror Lake Vill. LLC v. Wolf*, 971 F.3d 373, 375 (D.C. Cir. 2020) (citing 8 C.F.R. § 216.6(a)(4)(iii)-(iv)).  Successful adjudication and approval of an I-526 petition makes a petitioner eligible for a visa, but does not automatically provide a visa.  At the same time, approved eligibility status permits foreign investors (and their dependent family members) to apply for two-year conditional permanent resident status either from within the United States or overseas from the State Department at the United States consular post in the petitioner's home country.  *See* 8 U.S.C. §§ 1186b(a)(1), 1201(a), 1255(i); 8 C.F.R. § 245.2; 22 C.F.R. §§ 42.32(e), 42.41, 42.42.

After an I-526 petitioner is successfully adjudicated, approved and eligible for a visa, the petitioner is then subject to various limits generally applicable to visa availability and issuance before obtaining the visa.  The INA imposes annual limits on the total number of immigrant visas issued each year.  *See* 8 U.S.C. § 1151.  As relevant here, the agency first caps the worldwide level of employment-based immigrants each fiscal year, 8 U.S.C. § 1151(d), then limits the number of employment-based visas that may be granted to individuals from a single country to 7 percent, *see id.* § 1152(a)(2), and further limits the number of EB-5 visas to 7.1 percent of all employment-based visas granted, *see id.* § 1153(b)(5)(A).  That said, "not less than three thousand" EB-5 visas are to be afforded to foreign investors investing in "targeted investment areas" per fiscal year.  *See* 8 U.S.C. § 1153(b).  Subject to this allotment framework, the State Department "allocate[s] immigrant visa numbers," *see* 22 C.F.R. § 42.51(b), and when the demand for visas is higher than the supply of visas for a given year in any given category, a

4

visa queue forms. Visa petitions in that queue are organized by their "priority date," typically the date the petition was filed. *See* 8 U.S.C. § 1153(e); 22 C.F.R. § 42.54. A petitioner in the queue then becomes eligible for a permanent resident visa, barring any other indications of ineligibility, when the listed priority date for petitioner's country of origin and category printed in most recent monthly Visa Bulletin, published by the State Department, *see, e.g.*, U.S. DEP'T OF STATE, VISA BULL. FOR SEPTEMBER 2020 45 (Sept. 2000), https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2020/visa-bulletin-for-september-2020.html (last accessed Mar. 14, 2021), falls on a date later than petitioner's priority date, *id.* At that point, a visa is considered available to that petitioner. *See id.*

The agency historically managed pending I-526 petitions on a first-in, first-out (FIFO) basis until it switched, on March 31, 2020, to a "visa availability" process, which gives "priority to petitions where visas are immediately available, or soon available." *See* U.S. CITIZENSHIP AND IMMIGRATION SERVICES, USCIS ADJUSTS PROCESS FOR MANAGING EB-5 VISA PETITION INVENTORY ("EB-5 Processing Announcement") (Jan. 29, 2020), https://www.uscis.gov/news/news-releases/uscis-adjusts-process-for-managing-eb-5-visa-petition-inventory (last accessed Mar. 14, 2021). Using the latter process, the USCIS Immigrant Investor Program Office (IPO), the unit in charge of handling investor program applications, Compl. ¶ 53, is able to designate particular petitions to prioritize for processing by factoring in the availability of EB-5 immigrant visas and determining whether a visa is available or soon to be available to a petitioner. Def.'s Mem. at 6. The agency ascertains visa availability by comparing the petitioner's country of birth with the State Department's Visa Bulletin, which indicates the availability of visas by country. *Id.* Once an I-526 petition is designated for priority, however, the IPO resumes ordering its adjudicative priority list "in FIFO order." *See*

5

U.S. CITIZENSHIP AND IMMIGRATION SERVICES, QUESTIONS AND ANSWERS ("Questions and Answers") (Sept. 17, 2020), https://www.uscis.gov/working-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/questions-and-answers-eb-5-immigrant-investor-program-visa-availability-approach (last accessed Mar. 14, 2021).

After a petition is designated for priority and rises to the top of the FIFO list, it may be approved and proceed to the National Visa Center for pre-processing. *See* U.S. DEPARTMENT OF STATE, IMMIGRANT VISA PROCESS, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition.html (last visited Mar. 14, 2021). According to the government, this process is an improvement over the previously used "first-in, first-out" approach and better aligns with congressional intent by allowing petitioners from countries where visas are immediately available to be processed for EB-5 visas allotted by Congress without waiting behind petitioners from oversubscribed countries without visas currently available. *See* Questions and Answers.

### B. Factual Background

Plaintiff Priti Garg Noriah has been residing in the United States in H-4 non-immigrant status since March 2010. Compl. ¶ 32. On September 28, 2018, she sought to change her immigration status by filing a Form I-526, seeking classification as an EB-5 immigrant. *Id.* ¶ 45. To qualify for the classification, plaintiff previously entered into and signed a written subscription agreement to purchase a subscription unit and become a limited partner of CanAm New York Regional Center, LP VI ("CanAm VI") project, and subsequently invested $530,000 in the project. *Id.* ¶ 35–42. This project was a new commercial enterprise initiated by The New York Regional Center, LLC ("NYMRC"), a USCIS-designated regional center. *Id.* ¶ 34–35.

NYMRC pooled investments from foreign nationals to construct a sixty-five-story building, *id.* ¶ 36, that is estimated to create at least 7,550 full-time jobs, *id.* ¶ 36.

Plaintiff's I-526 petition conformed to an exemplar I-526 prepared by NYMRC as part of its regional center approval process and to the notice provided by USCIS to NYMRC regarding the documents a foreign investor must file with the Form I-526 in order to qualify for EB-5 status through the project. *Id.* ¶ 46. In addition, plaintiff submitted documents showing both how her investment would create ten full-time jobs and the source of the invested funds. *Id.* ¶ 46–47. On October 3, 2018, USCIS accepted her Form I-526 and provided a receipt. *Id.* ¶ 48; Compl., Ex. B, U.S. Citizenship and Immigration Services Receipt, ECF No. 1-2.

### C. Procedural History

On July 30, 2020, plaintiff initiated this litigation, challenging USCIS's delay in adjudicating her Form I-526 under the Administrative Procedure Act ("APA") and seeking a court order compelling USCIS to adjudicate her I-526 petition. *See* Compl. at 1; *id*. at 17, Prayer for Relief ¶¶ A–B (requesting relief as to "adjudication of [] Plaintiff's I-526 petition; [ and] [c]ompelling [d]efendant to process and render a final decision on Plaintiff's I-526 petition"). In response, USCIS moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim, *see* Def.'s Mem. at 1, which motion became ripe for resolution on November 13, 2020, *see* Def.'s Reply Supp. Def.'s Mot. Dismiss ("Def.'s Reply"), ECF No. 10. As noted, while the motion was pending, USCIS submitted a Notice of Suggestion of Mootness, advising that, on February 12, 2021, USCIS approved petitioner's I-526 petition rendering plaintiff's complaint moot, *see* Def.'s Not., a conclusion disputed by plaintiff, *see* Pl.'s OTSC Resp. at 2.

## II. DISCUSSION

USCIS moves to dismiss, under Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiff fails to state a claim of unreasonable delay of the adjudication of plaintiff's I-526 petition because "the petition has not been unreasonably delayed, nor has any delay been so egregious as to warrant the extraordinary remedy of mandamus." Def.'s Mem. at 8. Moreover, in light of USCIS's recent approval of plaintiff's I-526 petition, *see* Def.'s Not., USCIS argues that the case should be dismissed as moot, *see* Def.'s Reply Pl.'s OTSC Resp. ("Def.'s OTSC Reply") at 4, ECF No. 15.[3] For the reasons outlined below, the Court agrees that this action is now moot.

Although USCIS did not move to dismiss for lack of subject matter jurisdiction due to mootness, under Federal Rule of Civil Procedure 12(b)(1), its Notice of Suggestion of Mootness explains that plaintiff's I-526 petition, the subject of the underlying complaint, has been approved. While the "initial burden of proving mootness lies with the party claiming it," *Planned Parenthood of Wis., Inc. v. Azar*, 942 F.3d 512, 516 (D.C. Cir. 2019) (citing *Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010)), the Court must "address the issue [of mootness] *sua sponte* because [it] goes to the jurisdiction of this [C]ourt," *Fund for Animals, Inc. v. United States Bureau of Land Mgmt.*, 460 F.3d 13, 24 (D.C. Cir. 2006)

---

[3] USCIS acknowledges the omission of an index of an administrative record contemporaneously with the dispositive motion, positing that the index is "unnecessary to resolve the legal arguments presented in this motion" because "the basis for [plaintiff's] challenge is not final agency action, but rather agency inaction." Def.'s Mem. at 8 n.7. In the alternative, if this Court deems Local Civil Rule 7(n) applicable here, USCIS formally moves to waive compliance with the requirements of the rule. *Id.* Local Civil Rule 7(n) requires agencies, in cases involving judicial review of administrative agency actions, to "file a certified list of contents of the administrative record with the Court within 30 days following service of . . . the filing of a dispositive motion." LCvR 7(n). Following the practice of other courts in this jurisdiction, the Court grants USCIS's motion to waive compliance with Local Civil Rule 7(n) because "the administrative record is not necessary for [the court's] decision." *Connecticut v. United States Dep't of Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018) (quoting *Mdewakanton Sioux Indians of Minn. v. Zinke*, 264 F. Supp. 3d 116, 123 n.12 (D.D.C. 2017) and citing *PETA v. U.S. Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 94 n.2 (D.D.C. 2014)).

8

(quoting *Mine Reclamation Corp. v. FERC*, 30 F.3d 159, 1522 (D.C. Cir. 1994)); *see also Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (finding that a court "must consider" its subject-matter jurisdiction *sua sponte* "at any point in the litigation") (internal quotation marks and citation omitted); *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("Mootness is a jurisdictional question because the Court 'is not empowered to decide moot questions or abstract propositions'" (quoting *United States v. Alaska S. S. Co.*, 253 U.S. 113, 116 (1920))).

As the Supreme Court has explained "Article III of the Constitution limits federal subject matter jurisdiction to 'cases'" and 'controversies,'" *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016) (quoting U.S. CONST. art. III. §2), a requirement interpreted "to demand that 'an actual controversy . . . be extant at all stages of review, not merely at the time the complaint is filed,'" *id.* (quoting *Arizonans for Official English* v. *Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser* v. *Newkirk*, 422 U.S. 395, 401 (1975))). "[A] case becomes moot when the issues presented are no longer live' or the parties lack a legally cognizable interest in the outcome." *Porzecanski v. Azar*, 943 F.3d 472, 479 (D.C. Cir. 2019) (quoting *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013)). "[A] case is moot if intervening events make it impossible to grant any effectual relief or if a party has already obtained all the relief that it has sought." *Id.* (internal quotation marks and citations omitted). Thus, "the mootness doctrine prohibits [courts] from deciding a case if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *J.T. v. D.C.*, 983 F.3d 516, 522 (D.C. Cir. 2020) (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc) (internal quotation marks omitted)).

USCIS contends that this case should be dismissed as moot because plaintiff's complaint alleges delay only "in adjudicating, or withholding the adjudication of, [p]laintiff's I-526 petition," Prayer for Relief ¶ B, and plaintiff's I-526 petition was favorably adjudicated on February 12, 2021, Def.'s OTSC Reply at 1.  Plaintiff responds that the case is not moot because USCIS has "failed to inform [p]laintiff or the Court whether USCIS completed an essential part of the petition approval process by sending the approval to the National Visa Center (NVC) so that the Department of State may begin the process for [p]laintiff's immigrant visa application." Pl.'s OTSC Resp. at 1.

USCIS is correct that plaintiff's claim of unreasonable delay is now moot.  Plaintiff pled a single cause of action, alleging only that USCIS had "unreasonably delayed or unlawfully withheld the *adjudication* of [p]laintiff's I-526 petition."  Compl. ¶ 87; *see also id.* ¶ 66 (alleging that "[d]espite the immediate availability of an immigrant visa number for Priti Nohria relating to her I-526 petition, USCIS has failed to issue a decision on her petition."); Pl.'s Opp'n at 27 n.20 ("Plaintiff is not asking the Court to order the agency to approve her petition . . . [s]he is only asking for an order directing the agency to render a final decision and conclude the petition presented to it.").  The limited scope of plaintiff's claim is confirmed by the scope of the relief she seeks, namely to compel USCIS to "process and render a final decision on" her I-526 petition.  Compl. at 17.  In her complaint, plaintiff made no reference to the NVC, of any claim of agency delay in processing her visa, or of any relief that would have occurred after the adjudication of her I-526 petition.  Plaintiff simply requested a "final decision" on her I-526, and that has now occurred.

Plaintiff's emergent desire to have her approved I-526 petition submitted to the NVC "so that the Department of State may begin the immigrant visa process" is understandable because,

as plaintiff concedes, the I-526 approval "does not by itself accord [p]laintiff permanent resident status." Pl.'s OTSC Resp. at 1. Yet, plaintiff never sought permanent resident status through this action and, though challenging the agency's speed in adjudicating her I-526 petition, she raised no challenge to the agency's speed in granting her an EB-5 visa or permanent resident status.[4] In other words, by rendering a final decision on plaintiff's I-526 petition, USCIS has afforded plaintiff all the relief she demanded in her complaint. *Id.* at 2. This case is therefore moot.

Plaintiff insists that the case is not moot and asserts that she "still has a concrete interest" in pursuing "her request that USCIS transmit the approval of her petition to the NVC." Plaintiff supports her position with two cases, Pl.'s OTSC Resp. at 2 (citing *Knox v. SEIU, Local 1000*, 567 U.S. 298 (2012) and *Chafin v. Chafin*, 568 U.S. 165, 180 (2013)), but both cases are inapposite. In *Knox v. SEIU, Local 1000*, plaintiffs challenged a union's increase in dues without proper notice. 567 U.S. at 298. After finding defendant's second notice also inadequate in remedying the harm claimed, the Court concluded that the original claim remained "live" and the suit was not moot. *Id*. In *Chafin v. Chafin*, a legal challenge under the International Child Abduction Remedies Act was found not to be moot, even after the child had been removed to another country, because a "live dispute" and the "possibility of effectual relief" remained. 568 U.S. at 173, 180. By contrast, here, any live dispute has been extinguished because all "effectual relief" plaintiff sought within the four corners of her complaint was provided in full when her I-

---

[4] Plaintiff strains to re-write her complaint to expand the relief sought to permanent resident status by pointing to a checked box in her I-526 petition indicating that she intended to pursue "immigrant visa processing," as proof that "forwarding the approval to the NVC" was a "part of completing the process." Pl.'s OTSC Resp. at 1; *see* Pl.'s Opp'n, Ex. 9, Form I-526 at 8, ECF No. 8-9. This reference to plaintiff's ultimate goal is simply not the same as the relief sought in the complaint, which is silent about seeking any relief beyond what she has already achieved in the adjudication of her I-526 petition.

526 petition was adjudicated. Plaintiff's new demand to extend the life of this case until her approved petition is transferred to the NVC is relief beyond the scope of her original complaint.

Accordingly, plaintiff's claim of unreasonable delay in the adjudication of her I-526 is now moot and the complaint must be dismissed.[5]

## III. CONCLUSION

For the foregoing reasons, plaintiff's claim of unreasonable agency delay in rendering a final decision on her I-526 petition is now moot. Accordingly, the case is dismissed and USCIS's motion to dismiss is denied as moot. USCIS's motion to waive compliance with Local Civil Rule 7(n) is granted.

An Order consistent with this Memorandum Opinion will be filed contemporaneously.

Date: March 14, 2021

                                                                            BERYL A. HOWELL
                                                                            Chief Judge

---

[5] If this case were not moot, USCIS's motion to dismiss under Rule 12(b)(6) would be granted for failure to state a claim of unreasonable delay upon which relief can be granted. The APA requires agencies to "proceed to conclude a matter presented to [them]" in a "reasonable time," 5 U.S.C. § 555(b), and authorizes reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). A claim of unreasonable delay under the APA is determined by employing "the six-factor '*TRAC* test.'" *Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984) (internal quotations and citations omitted). The agency's process is clearly governed by a solid rule of reason—the visa availability approach—meeting the first factor, *see* Def.'s Mem. at 12; Pl.'s Opp'n at 16, and, under the fourth factor, any delay "reflects USCIS's competing priorities and limited resources," Def.'s Mem. at 16, such that granting plaintiff's requested relief would simply "move [her] petition to the front of the queue at the expense of other petitioners," Def.'s Reply at 15. Plaintiff's claim fails to indicate any consequences stemming from the alleged delay beyond delay itself, s*ee* Compl. ¶ 82 (alleging that "USCIS's delay is depriving [p]laintiff and her husband of the ability to obtain permanent residency through consular processing or by adjustment of statute" and "delay[ing] the removal of conditions on [p]laintiffs eventual permanent resident status"), which falls short of meeting the third and fifth factors of showing that human health and welfare are at stake or other prejudiced interests caused by delay, respectively. Finally, the sixth factor is neutral because plaintiff does not allege any bad faith on the part of the agency. The rule of reason governing the adjudication of I-526 petitions, the absence of any compelling justification for expediting the processing of plaintiff's petition "at the expense of other petitioners" arbitrarily, Def.'s Reply at 15, not to mention the substantial progress evidenced by the adjudication of plaintiff's I-526 petition on February 12, 2021, far outweighs the hardship this shorter-than-typical delay has caused plaintiff. Thus, consideration of these factors, as a whole, favors USCIS and demonstrates that plaintiff has not stated a claim under the APA for unreasonable delay. *See Sarlak v. Pompeo*, Civil Action No. 20-35 (BAH), 2020 U.S. Dist. LEXIS 101881, at *19 (D.D.C. Jun. 10, 2020) (reaching the same conclusion); *Ghadami v. United States Dep't of Homeland Sec.*, Civil Action No. 19-00397 (ABJ), 2020 U.S. Dist. LEXIS 47623, at *9 (D.D.C. Mar. 19, 2020) (same).